FILED

2007 Mar-27  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN  DIVISION

| | |
|---|---|
| RONALD H. SPEARS, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } |
| | }    CASE NO. CV 04-B-0126-W |
| PRISON HEALTH SERVICES, INC.; | } |
| ALABAMA DEPARTMENT OF | } |
| CORRECTIONS, | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is currently before the court on the defendants' Motions for Summary

Judgment, (docs. 37, 39),[1] as well as defendant Prison Health Services's Motion to Strike

(doc. 49), and plaintiff's motion to strike, found within his Opposition to PHS's Motion

for Summary Judgment.  (Doc. 44.)  Upon consideration of the record, the submissions of

the parties, the arguments of counsel, and the relevant law, the court is of the opinion that

the Department of Corrections's Motion for Summary Judgment is due to be granted, and

Prison Health Services's Motion for Summary Judgment is due to be granted.  As to the

Motions to Strike, the court is of the opinion that PHS's Motion is due to be granted in

part and denied in part, and the plaintiff's motion is due to be denied.

---

[1] Reference to a document number, ["Doc. ____"], refers to the number assigned to
each document as it is filed in the court's record.

I.      FACTUAL SUMMARY[2]

        The plaintiff is an inmate at the W.E. Donaldson Correctional Facility

("Donaldson") in Jefferson County, which is owned and operated by the Alabama

Department of Corrections ("DOC").  Prison Health Services is a private corporation

which is under contract with the DOC to provide medical and dental services to the

inmates at Donaldson and other correctional facilities.  Plaintiff alleges that PHS has

repeatedly failed to dispense his medications as prescribed since November 2003, when it

took over the Donaldson contract.  He alleges that he has been denied medication on

"more than a dozen occasions, with the 'explanation' by PHS medical employees that 'we

(or the pharmacy) are out of your medication.'" (Compl. at 8, D-10.)  Plaintiff also alleges

that, at times, PHS has refused to provide him with Medical Complaint or Grievance

forms, or any other means by which to report medical complaints and grievances to PHS.

(*Id.*, D-11(1).)  Nevertheless, plaintiff alleges that, several times prior to his filing of this

lawsuit, PHS was notified of its failure to provide plaintiff with his medications, but that

no corrective actions were taken.  (*Id.* at 9, D-12.)

        Plaintiff was born on October 2, 1942. (Spears's Depo., DOC Ex. 2 at 9.)  His

medical records indicate that he has a history of coronary artery disease, high blood

_____

        [2] Although some statements of fact are disputed, the evidence is cited in the light most
favorable to plaintiff, the non-moving party, and all reasonable inferences from admissible
evidence are drawn in favor of plaintiff.  *See e.g., Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313,
1315 (11th Cir. 2000).

2

pressure, high cholesterol, chronic chest pain, and peptic ulcer disease.  (PHS-000819).[3]

The treatment of plaintiff's heart condition has also included multiple hospitalizations,

and several surgical procedures.  In May 2001, plaintiff was admitted to UAB due to

increasingly severe chest pains.  (PHS-000819-000833).  He underwent two cardiac

catheterization procedures, angioplasty, and the placement of two stents. (PHS-000819-

000820).  In March of 2003, plaintiff was admitted at Carraway Methodist Medical

Center for evaluation by Cardiology.  (PHS-000760-000761).  Spears again underwent

cardiac catheterization, and a procedure for the placement of three additional stents.  *Id*.

In April 2005, the plaintiff underwent an additional cardiac catheterization procedure at

Alabama Cardiovascular Group, P.C. (Carraway).  (PHS-000900-000901.)  He did not

require additional stent placement at that time, but his treating physician noted the need to

re-admit him in the near future for diagnostic catheterization.  *Id*.  The record also

indicates that, although the plaintiff reported that he had experienced chest pains while he

was off his Atenolol, his symptoms had completely resolved since he re-started his

Atenolol.  (Spears's Ex. 4, Attachment D-1.)  In May 2005, he again underwent cardiac

catheterization, as well as coronary angiography, and left ventriculography.  *Id*.,

Attachment D-2 – D-3.  The treatment notes state that the plaintiff "presents with

---

[3] Plaintiff's Medical record was submitted by PHS in support of its Motion for Summary
Judgment as Exhibit A to the Affidavit of Will Mosier, M.D.  The court will refer to plaintiff's
medical record by reference to the Bates stamp number on each page.  Accordingly, all
subsequent references to "PHS-_____" are to the page number(s) of documents collected at
Exhibit A to the Affidavit of Will Mosier, Exhibit 1 in PHS's evidentiary submission.

exertional chest pain while he was off his Atenolol." *Id*., Attachment D-2.  The

prescribed plan was to "[c]ontinue with medical management.  If angina recurs, would

increase[] [dose] of beta blockers and add Imdur.  *Id*., Attachment D-3.

   Plaintiff has been prescribed the following medications, among others, to treat his

condition: Mevacor (used to reduce amount of cholesterol in blood); Atenanol (treatment

for high blood pressure and chest pain); Capoten (used to treat high blood pressure);

Imdur (used to control high blood pressure); Plavix (used to prevent clotting).

   In March 2004, PHS implemented a medication distribution system called "Keep

on Person" or "K.O.P.," through which, in theory, the inmates would be given all of their

medications for a particular month at one time.  (Spears's Depo., DOC Ex. 2 at 18.)  In

his June 11, 2004 deposition, the plaintiff testified that the K.O.P. program "works good

to a certain point." *Id*.  However, in his February 2006 Affidavit, he states that he was

still not receiving his medication as prescribed.  (Spears's Ex. 2 at unnumbered 2.)  The

plaintiff points to his "Medication Diary" for "a day-to-day presentation of both the

breakdown of the KOP program and PHS's denial of various medications to SPEARS."

(Doc. 44 at 20.)  Spears's "Medication Diary" reveals that, just one month after the

K.O.P. program was implemented, there was a period of over two weeks in which he did

not receive his Imdur: from April 25, 2004 through May 14, 2004.  (Spears's Ex. 1 at 17.)

In May 2004, there were three days in a row when the plaintiff did not receive his

Mavacore.  *Id*.  In August 2004, there were nine days on which the plaintiff did not

4

receive his Mevacor, and one day on which he did not receive his Imdur.  (*Id*. at 18.)  It appears that PHS was "out of Mevacor" from September 11, 2004 through September 20, 2004, that it was "out of Imdur" from October 27, 2004 through November 11, 2004, as well as November 26, 2004 through December 6, 2004.  (*Id*. at 19-20.)  The plaintiff notes that PHS was "out of Captopril, Mevacor, and Aspirin" from December 14, 2004 through January 10, 2005.  (*Id*. at 20.)  From January 11, 2005 through January 13, 2005 the plaintiff did not receive Aspirin, Mevacor, and Capoten.  (*Id*. at 21.)  He did not receive Mevacor again until January 18, 2005.  *Id*.  It appears that the plaintiff received his medication as prescribed from January 18, 2005 through February 10, 2005, but that from February 11, 2005 through February 13, 2005, he did not receive Imdur.  *Id*.  From February 16, 2005 through February 20, 2005, the plaintiff notes "out Copaten, Coptopril."  (*Id*. at 21-22.)  For the rest of February and through April 9, 2005, the plaintiff notes that he was receiving all of his medications through K.O.P.  (*Id*. 22-24.)  However, from April 10, 2005 through April 18, 2005, the plaintiff indicates that he did not receive his Atenolol.  (*Id*. at 23.)  From May 17, 2005 through June 1, 2005, the plaintiff did not receive Plavix, and from July 19, 2005 through August 1, 2005, he did not receive Imdur.  (*Id*. at 24-25.)  Plaintiff notes that "all ok" until December 14, 2005 through December 29, 2005, when he did not receive his Imdur.  (*Id*. at 29.)  He indicates that he was receiving his medication as prescribed, or "all ok," through January 31, 2006, the last date covered by the Diary.  (*Id*. at 29-30.)

5

Plaintiff has testified that he "complained a lot to the pill call nurse, Nurse Nichols,"and that "several times [he] did fill out sick call slips." (Spears Depo., PHS's Ex. 2 at 28.) Plaintiff's medical records show that he filled out "Sick Call Request" forms, complaining that he was not receiving his prescribed medication, on December 6, 2003, (PHS-000785;[4] PHS-000913), December 28, 2003, (PHS-000784;[5] PHS-000912), January 4, 2004, (PHS-000783; PHS-000911),[6] January 2, 2005, (PHS-000930).[7] Plaintiff testified that, at times when he was not receiving his medication, he was unable to document his complaint because there were no forms available. (Spears Depo., PHS's Ex. 2, at 27-29.) He contends that, despite his complaints, no effective corrective measures were taken.

Plaintiff brings federal claims against both defendants under 42 U.S.C. § 1983 alleging that they acted with deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution, and under 42 U.S.C. § 1986 for "Conspiracy to Deny Civil Rights." He seeks to compel the defendants to "immediately provide him with the medication which has been prescribed for him, and which defendants have repeatedly refused to provide. . . without interruption, unless and until a

---

[4] Plaintiff said he needed Mevacor because he was "having chest pains."

[5] Plaintiff said he needed Mevacor and medications for sore throat and sinus drainage.

[6] Plaintiff requested Mevacor.

[7] Plaintiff stated that he had been out of K.O.P. (his monthly medications) for over a month.

6

"Free World" cardiac specialist prescribes otherwise."  (Compl. at 11, E-6.)  Plaintiff also

requests monetary relief in the form of compensatory and punitive damages.  (*Id.* at 13, F-

6, F-7.)  In addition, plaintiff alleges state law claims against both defendants for breach

of contract and civil conspiracy.  (*Id*. at 17, I, J.)

## II.   MOTIONS TO STRIKE

### A.   PHS's Motion to Strike

Defendant PHS moves the court to strike specifically-identified portions of

Plaintiff's Submission in opposition to PHS's Motion for Summary Judgment.  (Doc. 49.)

 The Eleventh Circuit has held that "[t]he nonmoving party. . .  need not produce evidence

*in a form* that would be admissible at trial to avoid summary judgment; instead its

evidence must be reducible to admissible evidence."  *U.S. v. Four Parcels of Real

Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428,

1444 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))

(internal quotation marks omitted; emphasis in original).

### 1.   *Spears's Exhibit 1 - Medication Diary*

The court has only considered the portions of the "Medication Diary" regarding

the dates on which the plaintiff received or did not receive his medications.  The

"Medication Diary" itself may not be admissible as evidence at trial, however, the

plaintiff would be expected to testify to the information therein regarding when he did not

receive certain medications, and would be able to use the Diary to refresh his memory

regarding the specifics thereof.  *See* Fed.R.Evid. 803(5). The court did not consider any hearsay statements within the diary.  Therefore, as to Spears's Exhibit 1, the Motion to Strike will be denied.

### 2.    *Spears's Exhibit 2 - Spears's Affidavit*

The court has not relied on paragraphs 1-7 of Spears's Affidavit, therefore the Motion is due to be denied as moot as to that portion of Exhibit 2.  In paragraph 8, Spears merely relates his experience regarding the deprivation of medication.  The Motion to Strike paragraph 8 is denied.  In paragraphs 9 and 10 Spears attempts to establish a cause and effect relationship between occasions in which he did not receive his medication and his pain.  Spears must have a qualified expert to draw that conclusion.  He cannot do so himself through his own affidavit.  Therefore, paragraphs 9 and 10 of Spears's Affidavit will be stricken.  In paragraph 11, Spears avers that he has suffered from the emotional and mental stress of "knowing that I might die as a result of the defendant's failure or refusal to provide [him] with [prescribed] medications."  This statement also requires expert testimony that failure to receive such medications could result in plaintiff's death. Therefore, paragraph 11 of his Affidavit will be stricken.[8]

### 3.    *Spears's Brief in Opposition to PHS's Motion for Summary Judgment*

PHS also moves the court to strike portions of Spears's Brief in Opposition to

---

[8]    The Motion mentions paragraphs 12 and 13, but the Affidavit submitted to the court as Exhibit 2 has only 11 paragraphs.

Summary Judgment  (doc. 44).  In determining whether a genuine issue of material fact exists for trial, the court has considered the evidence submitted in consideration of PHS's Motion for Summary Judgment and the relevant law.  It will not consider *argument* made by plaintiff's counsel in his Brief as *evidence*.  Therefore, the Motion to Strike will be denied as to portions of the Plaintiff's Brief.

4.      ***Spears's Exhibit 3 - Portions of PHS's Health Care Services Proposal***

The court has not relied on Spears's Exhibit 3 in its consideration of PHS's Motion for Summary Judgment.  Therefore, the Motion to Strike is due to be denied as moot as to Exhibit 3.

5.      ***Spears's Exhibit 4 - Sick Call Request Forms; Joint Inmate Affidavit***

PHS moves the court to strike these exhibits because it contends that they consist of hearsay statements and are therefore inadmissible under Rule 802 of the Federal Rules of Evidence.  The court has not relied on the Sick Call Request form of any inmate other than the Sick Call Request forms of the plaintiff. Therefore, because the information in the plaintiff's own forms is reduceable to admissible evidence, and PHS's Motion is due to be denied as to that portion of Ex. 4.

The Statement signed by several other inmates appears to be in the form of a joint affidavit.[9]  (Pl.'s Ex. 4, Attachment B-7 – B-15.)  By signing, each inmate has adopted the statement at the top of the first page which states:

---

[9]  However, the "statement" is not provided under oath.

9

We, the undersigned inmates at Donaldson Correctional Facility, hereby attest to the fact that Prison Health Services, Inc., (PHS) by and through its medical staff, has either failed or refused to provide medication which has been prescribed for us.  We request that Mr. William R. Murray, who we have been advised is Mr. Ronald Spears's attorney, make these facts known to both the Alabama Department of Corrections and to the officers of PHS.

Fourteen prisoners, including Spears, signed their names, and most listed the medications they allege PHS has refused or failed to provide and the dates on which the listed medications were not administered.  This evidence contained in Ex. 4 is due to be stricken.  There is no evidence before the court that any of the inmates who signed the Attachment beginning at plaintiff's Ex. 4, Attachment B-7 suffered from a serious medical need.  Although the plaintiff has produced evidence which could be reduced to admissible form if the inmates testified at trial, such evidence would have no relevance. Absent proof that the inmate in question suffered from a serious medical need, failure to dispense medication as prescribed, as attested to in plaintiff's Ex. 4, Attachment B-7 – B-15, is not evidence of a constitutional violation.[10]  Therefore, defendant's Motion to Strike the portions of Ex. 4 containing statements made by other prisoners concerning their medication will be granted.

**B.     Spears's Motion to Strike (within his Brief in Opposition)**

Dr. Will Mosier, medical director of PHS, reviewed plaintiff's medical records as

---

[10]  For example, in *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1172 (11th Cir. 1995), the record revealed that the plaintiff was "not the only City inmate who complained of a lack of adequate treatment for serious medical problems . . ."  Here, unlike *Young*, plaintiff has offered no evidence that the inmates who allegedly were denied medication, suffered from "serious medical problems."

10

well as plaintiff's deposition.  (Mosier Affidavit, PHS's Ex. 1 at unnumbered 2.)  In his

Affidavit, Dr. Mosier states that the plaintiff's medical records indicate that his

cholesterol is under control, in the 150 range, which is considered "minimally elevated."

*Id*.  Dr. Mosier averred that, given plaintiff's cholesterol level, he would not have

incurred any substantial injury as a result of not receiving Mevacor daily.  *Id*.  Dr. Mosier

stated further that plaintiff's medical records show that the stents placed in his coronary

arteries are "patent," meaning they are intact and not in need of any repair, and that the

results of plaintiff's May 2005 cardiac catheterization established that he had not suffered

any significant damage or harm to his arteries or heart as the result of any lack of

medication.  *Id*.

Plaintiff moves the court to strike the Affidavit of Dr. Mosier in its entirety

because it fails  to state that it is "based upon personal knowledge" as required by Rule

56(c) of the Federal Rules of Civil Procedure.  (Doc. 44 at 12.)  Plaintiff also contends

that Dr. Mosier is not qualified to testify  as to the plaintiff's chronic cardiac condition

because he is not a cardiologist.  *Id*.  Finally, plaintiff argues that the court should strike

Dr. Mosier's Affidavit for its failure to comply with the court's requirements regarding

the form of submissions in support of summary judgment.  *Id*.

Dr. Mosier testifed that he is board certified in, *inter alia*, internal medicine,

pulmonary medicine, and forensic medicine.  (Mosier Affidavit, PHS's Ex. 1 at

unnumbered 1.)  The court is satisfied that Dr. Mosier is sufficiently qualified, under Rule

702, to offer his opinion as to the effects on the plaintiff's health resulting from missed

doses of his prescribed medications. Therefore, the plaintiff's motion to strike his Affidavit is due to be denied.

## III.     SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show either by affidavits, depositions, or discovery responses on file that there exist "specific facts showing that there is a

12

genuine issue for trial," *Celotex*, 477 U.S. at 324.  The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings.   *Id.*   "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608.  After a properly made motion has been presented and the court has allowed appropriate responses to be submitted, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

## IV.    PRISON HEALTH SERVICES ("PHS")

### A.    Section 1986

Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986.  Because Section 1986 claims are derivative of Section 1985 violations, a plaintiff cannot establish a violation of Section 1986 without establishing a violation of Section 1985.  Because the plaintiff has failed to allege and to offer any evidence to support a Section 1985 violation, his claims under Section 1986 are due to be dismissed as a matter of law.

### B.    Section 1983

The plaintiff has alleged that PHS acted with deliberate indifference to his serious

13

medical needs, which falls within the Eighth Amendment's prohibition against "cruel and unusual punishments." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  However, to state a claim under Section 1983, the plaintiff must not only allege a violation of rights secured by the Constitution and laws of the United States, but must also show that the alleged deprivation was committed by a person acting under state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988). Although PHS is a private entity, it is a "person acting under state law" for the purposes of claims like the plaintiff's under Section 1983.  The Supreme Court has stated that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West*, 487 U.S. at 56.  When the state contracts out its medical care of inmates, the obligations of the Eighth Amendment attach to the persons with whom the state contracts.  *Id.*  However, for an entity such as PHS, liability does not attach solely because a constitutional violation has occurred.

The Supreme Court has interpreted the language of Section 1983 to require that liability attaches only to those actors who violate a plaintiff's rights.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  In *Monell*, the court held that municipalities are "persons" for the purposes of Section 1983, but that they can be liable only where "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 663.  Likewise, municipalities may be sued for

14

"constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.  Although PHS is not a municipality, or local government, it falls under the purview of *Monell*.  *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (holding that the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171 (11th Cir. 1995) (Liability will attach only where a [corporation] custom or policy is the moving force of the constitutional violation).  Therefore, in order to establish liability on the part of PHS, the plaintiff must demonstrate that the alleged constitutional violation resulted from an official policy or custom of PHS.  *Id.*

## 1.    *Constitutional Violation: Deliberate Indifference*

To show that a prison official acted with deliberate indifference to a serious medical need of a prisoner, and thus violated his Eighth Amendment rights, a plaintiff must satisfy both an objective and a subjective inquiry.  "First, a plaintiff must set forth evidence of an objectively serious medical need.  Second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotation marks and internal citations omitted).

In the Eleventh Circuit, "a serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*,

320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Regional Youth Det. Ctr.*,

40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical need

must be one that, if left unattended, poses a substantial risk of serious harm."  *Id.* (quoting

*Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)) (quotation marks omitted).

However, "the medical need of the prisoner need not be life-threatening."  *Washington v.*

*Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).  Eleventh Circuit precedent recognizes a

range of medical needs which are sufficiently serious to constitute serious medical needs

for the purposes of the Eighth Amendment, and has noted some medical needs which are

not.[11]  Considering the plaintiff's age and medical history, the fact that he has been

diagnosed with a chronic cardiac condition requiring ongoing treatment, as well as the

medical intervention that he has required in the past, the court will assume for purposes of

deciding defendant's Motion for Summary Judgment that plaintiff has established a

---

[11]  *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) (prisoner's HIV and hepatitis were serious medical needs); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003)(prisoner's need for dental care combined with the effects of not receiving it can constitute a serious medical need); *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995) (asthma, with continual breathing problems and with intermittent wheezing, coughing, and hyperventilating, can constitute a serious medical need); *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990) (broken foot was a serious medical need); *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) (inmate's "pseudofolliculitis barbae" or "shaving bumps," does not rise to the level of a serious medical condition under the Eighth Amendment); *Dickson v. Coleman*, 569 F.2d 1310 (5th Cir. 1978) (inmate's high blood pressure presented no "true danger" or "serious threat" to his health).

serious medical need.[12]

To satisfy the subjective prong of the inquiry, the plaintiff must show that the defendant acted with an attitude of deliberate indifference to the plaintiff's serious medical need. To establish deliberate indifference, the plaintiff must demonstrate subjective knowledge of a risk of serious harm, and a disregard of that risk by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). In *Farmer v. Brennen*, 511 U.S. 825, 837-38 (1994), the Supreme Court explained the subjective mental state required for deliberate indifference in a conditions-of-confinement claim as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; **the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference**. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

(emphasis added). In *Campbell v. Sikes*, 169 F.3d 1353, 1364-65 (11th Cir. 1999), the

---

[12] The court's hesitation in making a finding that plaintiff suffers from a "serious medical need" comes from the fact that the plaintiff presented no evidence that if he did not receive his medication as prescribed, this would pose a "substantial risk of serious harm" to his health. *Farrow v. West*, 320 F.3d at 1243. Nevertheless, because plaintiff could likely produce such evidence and because his medical condition has been determined by a physician to warrant treatment by medication, the court is of the opinion that it should assume plaintiff has made a showing of a serious medical need for purposes of deciding the objective prong of the deliberate indifference test. *See Aswegan v. Bruhl*, 965 F.2d 676 (8th Cir. 1992) (although not discussed, court apparently found that seventy-year-old inmate who suffered from heart disease, pulmonary disease, and arthritis had established serious medical need).

Eleventh Circuit, discussing *Farmer*, stated as follows:

> Thus, in light of *Farmer*, liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. [citing *Farmer*, 511 U.S. at 838]; *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ...' ") (quoting *Farmer*, 511 U.S. at 838)).  Thus, the official must have a subjectively " 'sufficiently culpable state of mind.' " This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer*, 511 U.S. at 834.

(citations omitted).

In *Campbell*, the plaintiff argued that "defendants misdiagnosed her as having a polysubstance abuse disorder when they knew or should have known she had bipolar disorder, discontinued medication that would have treated her bipolar disorder, improperly used behavior modification techniques, and waited eight months before sending her outside the prison for diagnostic tests." *Id*. at 1366.  Despite expert testimony stating Defendants' medical care was grossly inadequate, the Eleventh Circuit found that the evidence was insufficient for a reasonable jury to find that the defendants "knew [plaintiff's] treatment was . . . grossly inadequate but proceeded with the treatment anyway." *Id*. at 1367.  The court held that, pursuant to *Farmer*, without evidence to establish the subjective mental intent prong of deliberate indifference, defendants were entitled to summary judgment.  *Id*.

Here, like in *Campbell*, there is no evidence that would support an inference that any PHS employee was consciously aware of a serious medical risk to plaintiff and

disregarded that risk.  Nothing in the record suggests that any PHS employee was actually aware of a substantial risk of serious harm if plaintiff was not given his medication exactly as prescribed.[13]  Taking the plaintiff's "Medication Diary" as true, the plaintiff has established gaps in the dispensing of his medication however, he has not demonstrated that his medication was at any time completely terminated.  Plaintiff did not offer expert testimony that PHS employees even violated the standard of care; and there is no evidence whatsoever that defendant's employees "knew [their] treatment was . . . grossly inadequate but proceeded with the treatment anyway."  *Campbell*, 169 F.3d at 1367.

On the record before the court, no reasonable jury could conclude that PHS employees acted with deliberate indifference to plaintiff's medical needs.  Because plaintiff did not present evidence on which a reasonable jury could find defendant employees possessed the requisite subjective mental intent, defendant PHS is entitled to summary judgment on plaintiff's Eighth Amendment claim under Section 1983.[14]

---

[13]  Plaintiff does not prove a constitutional violation simply by offering evidence that he was not provided his medication exactly as prescribed.  He must introduce evidence on which a reasonable jury could find that defendant's employees acted with deliberate indifference to a serious medical need.  This he has failed to do.

[14]  Because defendant PHS is entitled to judgment on the ground that plaintiff has failed to establish a constitutional violation, the court will not discuss defendant's argument that plaintiff has not established that any constitutional violation was pursuant to a custom or practice.  The court notes however, that on the facts of this case defendant would be entitled to judgement as a matter of law on this ground also.

C.      State Law Claims

The plaintiff alleges state law claims against PHS for breach of contract, and civil conspiracy to breach a contract.  PHS moves for summary judgment on all of plaintiff's claims against them, but does not put forth any argument as to why summary judgment is due on plaintiff's claim for breach of contract and/or civil conspiracy.

1.      *Breach of Contract*

Plaintiff alleges that PHS breached its contract with the DOC to provide medical care to inmates at Donaldson, and that it is liable to him, an intended third party beneficiary to the contract, for the alleged breach.  To recover under a third-party beneficiary theory, the plaintiff must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the plaintiff was the intended beneficiary of the contract; and (3) that the contract was breached. *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Richie, Inc.*, 512 So.2d 99, 101-02 (Ala. 1987).  The court will assume that plaintiff was an intended third party beneficiary of the contract between PHS and the DOC, and has therefore met the first two requirements of his breach of contract claim.  *See Cherry v. Crow*, 845 F.Supp. 1520, 1523 (M.D. Fla. 1994).  Although the plaintiff has produced what appears to be PHS's proposal to the DOC regarding services it would provide if granted the contract to provide medical services at Donaldson and other correctional facilities, he has produced only the first page of the actual contract.  (Spears's Ex. 3.)  Absent proof of the specific terms of the contract on which he seeks to recover, the court cannot discern whether

plaintiff has sufficient evidence to establish that the contract has been breached.[15]  Even assuming that the plaintiff has established the requisite elements of his breach of contract claim, however, the defendants are nevertheless entitled to summary judgment due to the fact that the damages he seeks are not recoverable under the facts of this case.

Plaintiff seeks "compensatory damages for the mental and emotional anguish which Defendants' respective breaches have caused him."  (Compl., at 18, I-6.)  Under Alabama law, the general rule is that mental anguish is not a recoverable element of damages arising from breach of contract.  The thought is that damages for mental anguish are too remote, were not within the contemplation of the parties, and the breach of contract is not such as will naturally cause mental anguish.  *Ruiz de Molina v. Merritt & Furman Ins. Agency Inc.*, 207 F.3d 1351, 1359 (11th Cir. 2000), *on remand*, 220 F.Supp.2d 1249 (N.D.Ala.2002), *aff'd*, 54 Fed.Appx. 686 (11th Cir. 2002).  There are, however, certain narrow exceptions to this general rule.  One of the better statements of the category of claims which may fall under the exception is found in the following jury instruction:

> Where the contractual duty or obligation is so related with matters of mental concern or apprehensiveness or with the feelings of the *party to whom the duty is owed*, that a breach of that duty will necessitate or reasonably result in mental anguish or suffering, and such matters were reasonably within the contemplation of the parties when the contract was made, then in such event, if the Plaintiff is entitled to recover, he would be entitled to recover such sum as would reasonably compensate him for such mental anguish and

---

[15]  Given the court's conclusions regarding plaintiff's § 1983 claim, it is highly unlikely that plaintiff could prevail on his breach of contract claim.

physical suffering.

Alabama Pattern Jury Instructions – Civil (2d ed.1993) § 10.28.  Claims involving

certain types of contracts, as described above, are said to deserve special treatment

because it is highly foreseeable that egregious breaches of certain contracts will result in

significant emotional distress.  *Ruiz de Molina*, 207 F.3d at 1359; *Sexton v. St. Clair*

*Federal Savings Bank*, 653 So.2d 959, 962 (Ala. 1995).  Speaking of exceptional cases

in which Alabama law does allow mental anguish claims resulting from breach of

contract, the Eleventh Circuit has stated:

> The majority of the cases in which a plaintiff has been allowed to recover
> damages for mental anguish involved actions on "contracts for the repair or
> construction of a house or dwelling or the delivery of utilities thereto, where
> the breach affected habitability."  *See, e.g., Liberty Homes, Inc. v. Epperson*,
> 581 So.2d 449, 454 (Ala. 1991); *Orkin Exterminating Co. v. Donavan*, 519
> So.2d 1330 (Ala.1988); *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297
> (Ala.1986); *Alabama Power Co. V. Harmon*, 483 So.2d 386 (Ala. 1986). . .
> .
>
> A smaller number of cases has permitted such recovery in actions
> involving the burial of loved ones, suits based on a physician's promises to
> deliver a child, and claims based on the breach of a new car warranty where
> the owner suffers significant fear, anxiety, and embarrassment.  *See Taylor v.*
> *Baptist Medical Center, Inc.*, 400 So.2d 369 (Ala.1981); *Volkswagen of*
> *America, Inc. v. Dillard*, 579 So.2d 1301 (Ala.1991).

*Ruiz de Molina*, 207 F.3d at 1359.  The Alabama Supreme Court has made clear that it

is not eager to "widen the breach in the general rule" prohibiting the recovery of mental

anguish damages for breach of contract, *Dillard*, 579 So.2d at 1304, and has stated that

"[e]xcept for the identified types of emotionally intertwined cases to which the Eleventh

Circuit refers [in *Ruiz de Molina*], we have declined to extend emotional-distress

damages to contract claims." *Bowers v. Wal-Mart Stores, Inc.*, 827 So.2d 63, 70 (Ala. 2002).

Plaintiff's claim, because it involves a potentially serious risk to his health, might seem, at first blush, to fall into the exception to the general rule prohibiting the recovery of mental anguish damages for breach of contract. However, it does not fit into any of the identified types of emotionally intertwined cases recognized by the Alabama Supreme Court. Therefore, because plaintiff only seeks damages for mental and emotional anguish, his claim for breach of contract is due to be dismissed as a matter of law.

### 2.    *Civil Conspiracy*

Plaintiff alleges that defendants "have mutually agreed not to carry out the terms of their taxpayer-subsidized CONTRACT." (Compl., at 19, J-2.) "In order to succeed on a civil conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful purpose by unlawful means." *Luck v. Primus Automotive Financial Services, Inc.*, 763 So.2d 243, 247 (Ala. 2000). The plaintiff has not produced evidence to establish any element of this claim. Therefore, PHS's Motion for Summary Judgment is due to be granted as to the plaintiff's claim against it for civil conspiracy.

## V.    ALABAMA DEPARTMENT OF CORRECTIONS

The Eleventh Amendment of the United States Constitution prohibits federal courts from entertaining suits by private parties against States and their agencies.

23

*Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such suit."). The plaintiff does not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the state of Alabama shall never be made a defendant in any court of law or equity." Because all of plaintiff's claims are asserted directly against the DOC, both for damages and for equitable relief, the DOC must be dismissed with prejudice as a defendant.

## VI.    CONCLUSION

Based on the forgoing, the court finds that the DOC's Motion for Summary Judgment (doc. 37) is due to be granted, and all claims against the DOC dismissed; PHS's Motion for Summary Judgment (doc. 39) is due to be granted; PHS's Motion to Strike (doc. 49) is due to be granted in part, and denied in part; and the plaintiff's motion to strike is due to be denied. An order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 27th day of March, 2007.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE